IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SYLVIA SINGLETARY, D.V.M.,**

    Plaintiff,                                           CASE NO.:  **1:17-cv-1198**

v.

                                                      **JURY TRIAL DEMANDED**

**HOWARD UNIVERSITY,**

    Defendant.

**COMPLAINT**

The Plaintiff, Sylvia Singletary, D.V.M. ("Dr. Singletary"), by counsel, states as follows for her Complaint against Howard University:

## I. NATURE OF THE ACTION

1. This is an action for wrongful discharge from employment in reprisal for engaging in activity protected by the False Claims Act, 31 U.S.C. §3729, *et seq.* and, more specifically, 31 U.S.C. §3730(h).

2. Howard University terminated Dr. Singletary's employment because she engaged in protected activity under the Act.  Dr. Singletary's termination violated 31 U.S.C. §3730(h).

3. Dr. Singletary seeks compensatory damages sufficient to make her whole for the significant financial and non-economic harm she has suffered.

## II. JURISDICTION AND VENUE

4. This action arises as a result of the Defendant's violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. §3730(h), and the Court has subject matter jurisdiction over this action under 31 U.S.C. §3730 and 31 U.S.C. §3732.

5. Venue is appropriate in this Court under 28 U.S.C. §1391 because all acts and/or omissions described herein occurred within the District of Columbia and the Defendant maintains its principal places of business within the District.

### III.   PARTIES

6. Dr. Singletary is, and was all times relevant to this Complaint, a resident and citizen of the United States. She was at all times relevant to this matter a duly licensed doctor of veterinary medicine.

7. Defendant Howard University is a private corporation federally chartered as an institution of higher learning by act of Congress passed March 2, 1867. It is located in the District of Columbia. Howard operates the Howard University College of Medicine (hereinafter Howard University and the Howard University College of Medicine shall generally be referred to collectively and singularly as "Howard" or "Howard University").

### IV.   FACTS

8. Howard University originally hired Dr. Singletary to work as a veterinarian within the Howard University College of Medicine. She was responsible for the care and custody of all laboratory animals utilized at Howard's College of Medicine.

9. Dr. Singletary performed her duties in an exemplary manner throughout her employment with Howard. The requirements of her position mandated that she work with various researchers and investigators to ensure proper care and the humane and ethical treatment of laboratory animals.

10. There are myriad requirements that must be met by Howard and similar medical schools relating to the care and use of laboratory animals. The Animal Welfare Act was signed into law in 1966. The Health Research Extension Act was signed into law in 1985. These

federal statutes regulate the care and use of animals in laboratory settings and are the salient statutes under which guidelines and regulations for animal research activity are promulgated.

11. Early in 2014, it became apparent to Dr. Singletary that Howard was in violation of the Animal Welfare Act, the Health Research Extension Act and the various regulations promulgated thereunder. More specifically, laboratory animals at Howard were being kept in conditions clearly in violation of regulations related to ambient air temperature and general treatment. The animals were being kept in areas that were too hot. This resulted in unnecessary suffering and deaths of laboratory animals used by Howard.

12. Dr. Singletary made every effort within Howard to rectify these issues and to bring the institution into compliance with the various statutes and regulations that applied. She informed her superiors on multiple occasions that the laboratory animals' living conditions must be improved in order to comply with the statutes and regulations cited herein and to prevent operating the facility in a manner that resulted in cruelty to animals.

13. In addition to the statutory authorities discussed above, the treatment of the laboratory animals violated mandatory conditions of several federal grants that were paid to Howard to care for these animals and to fund research. Howard was periodically required by these grants to certify compliance with the statutes, and the regulatory regime supporting them, to the National Institutes of Health ("NIH"), an agency of the United States. It became clear to Dr. Singletary that the certifications that Howard had, upon information and belief, been making to NIH about the laboratory animals' ambient living conditions were false.

14. By mid-April of 2014, it had become clear to Dr. Singletary that Howard would not comply with the regulations despite her efforts and many communications to her superiors

made in an effort to procure Howard's compliance. As a result, Dr. Singletary made a formal complaint to the National Institutes of Health on April 15, 2014.

15. After this complaint was made, she received open hostility from management in response to her concerns and in routine daily matters rather than cooperation and professional treatment.

16. Dr. Singletary had made every effort possible to correct Howard's practices within the University, without going to outside authorities. These efforts included several clear and simple communications to her superiors that the living conditions of the laboratory animals did not comply with the statutes and regulations cited herein and, further, did not comply with the express conditions of the grants under which Howard's College of Medicine was funded.

17. Despite excellent performance, and no previous record of professional lapses or performance deficiencies, Dr. Singletary was given notice by Howard on June 20, 2014, that her employment would be terminated. This action was taken in direct retaliation for her efforts to force compliance with the statutes, regulations and grant requirements discussed and presented herein.

18. Dr. Singletary was fired because of her insistence that sound and ethical medical and business practices be followed, that the laboratory animals be treated in a humane fashion and because she reported the problems related herein to the National Institutes of Health, the body responsible for enforcing the conditions of certain grants under which Howard's College of Medicine operated. Terminating Dr. Singletary under these circumstances is a clear violation of the anti-retaliation provisions of the False Claims Act which are codified at 31 U.S.C. §3730(h).

19. Dr. Singletary has suffered significant pecuniary and non-pecuniary damages as a direct, actual and proximate result of the acts complained of herein. Her career with Howard has

been destroyed. She has suffered significant loss of pay and benefits. Moreover, she has experienced significant mental anguish, pain, suffering, emotional distress, humiliation and loss of quality and enjoyment of life. Her professional reputation has been significantly harmed by Howard's actions. The actions taken by Howard as set forth herein were intentional, willful, wanton and reckless.

## COUNT I

### *Retaliation in Violation of the False Claims Act*

20. Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

21. Under the False Claims Act, a party can be held liable for: a) knowingly[1] presenting to the government, or causing to be presented, a false or fraudulent claim for payment or approval; b) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; or c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government. 31 U.S.C. §3729(a). It is critical to note that specific intent to defraud is not necessary to prove a claim under the False Claims Act. 31 U.S.C. §3729(b).

22. There are two general types of claims that can be asserted under the False Claims Act: claims that are legally false and claims that factually false. An example of a factually false claim is presented where there is a contract to supply 1,000 pieces of equipment to the government, the contractor bills the government and receives payment for 1,000 pieces of equipment, but knew that only 900 pieces of equipment were delivered. A legally false claim is one in which representations and certifications are made to the government about the

---

[1] Under the False Claims Act "knowingly" means: actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; or acting in reckless disregard of the truth or falsity of the information. 31 U.S.C. §3729(b).

provenance, conditions or quality of a product or service delivered to the government which are not true.[2]

23. Howard University, upon information and belief, made certifications to the National Institutes of Health and other federal agencies that the laboratory animals in question in this matter were being maintained and cared for under certain ambient living conditions. These representations and warranties by Howard included representations pursuant to which Howard promised to maintain the laboratory animals in a humane, and identified, temperature range. Upon information and belief, the representations ultimately made by Howard to NIH on this subject were false. Dr. Singletary took action to remedy Howard's failure to comply with these requirements and this constituted protected conduct under 31 U.S.C. §3730(h).

24. Given the circumstances related herein, a reasonable person in Dr. Singletary's position would have considered filing, and Dr. Singletary in fact considered filing, an action against Howard University under the federal False Claims Act. Such an action indeed became a distinct and reasonable possibility as soon as Dr. Singletary became aware of all the facts related above.

25. Dr. Singletary engaged in protected activity under 31 U.S.C. §3730(h) when she raised concerns, complaints and questions regarding the propriety of Howard University's conduct as related herein and when she made her complaint to the National Institutes of Health.

26. The Defendant ignored Dr. Singletary's concerns and terminated her because she complained about, and raised concerns about, the violations of the statutes, regulations and grant conditions discussed herein.

27. As a direct, actual and proximate result of the Defendant's conduct, Dr. Singletary has suffered significant pecuniary and non-pecuniary damages including loss of future pay and

---

[2] This type of claim could also apply to the general circumstances or conditions under which a service is performed.

benefits, loss of back pay and benefits, loss of promotion opportunities, as well as suffering mental anguish, anxiety, frustration, pain, humiliation, loss of reputation and loss of quality and enjoyment of life.

WHEREFORE, Sylvia Singletary, D.V.M., respectfully prays that this Court order the following relief for the claims asserted herein:

a) Order the Defendant to restore Dr. Singletary to her former position or to a comparable position and award her other equitable relief as appropriate;

b) Order the Defendant to institute programs, practices and policies which eradicate the effects of past retaliation in violation of the statutes set forth above;

c) Order the Defendant to make Dr. Singletary whole with payment of all pecuniary losses suffered as a result of the events set forth above including awards of back pay, reinstatement or front pay, lost benefits including lost health and retirement benefits, all with pre-judgment and post-judgment interest as applicable;

d) Order the Defendant to pay Dr. Singletary a separate and additional sum equivalent to her award of back pay as required under 31 U.S.C. §3730(h);

e) Order the Defendant to make Dr. Singletary whole by providing her full compensation for all non-pecuniary damages including emotional pain, suffering, inconvenience, anxiety, frustration, mental anguish, loss of reputation and loss of quality and enjoyment of life, with pre-judgment and post-judgment interest as applicable;

f) Order the Defendant to pay Dr. Singletary all costs and attorney's fees incurred in the prosecution of this action; and

g) Order such other relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

The Plaintiff requests a jury trial on all issues raised in this Complaint.

Respectfully submitted,

**SYLVIA SINGLETARY, D.V.M.**

By: _/s/ James H. Shoemaker, Jr._
Of Counsel

James H. Shoemaker, Jr., D.C. Bar No. VA029
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com