IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SYLVIA SINGLETARY, D.V.M.,**
12 North Broadway, Apt 2A
Yonkers, New York 10701

    **Plaintiff,**                        CASE NO.: **1:17-cv-1198**

v.

                                     **JURY TRIAL DEMANDED**

**HOWARD UNIVERSITY,**
2400 6TH STREET
WASHINGTON, D.C. 20059

    **Defendant.**

## FIRST AMENDED COMPLAINT

The Plaintiff, Sylvia Singletary, D.V.M. ("Dr. Singletary"), by counsel, states as follows for her First Amended Complaint which is filed pursuant to Fed. R. Civ. P. 15(a)(1)(A)[1] against Howard University:

### I. NATURE OF THE ACTION

1. This is an action for wrongful discharge from employment in reprisal for engaging in activity protected by the False Claims Act, 31 U.S.C. §3729, *et seq.* and, more specifically, 31 U.S.C. §3730(h). In addition, this action seeks relief for wrongful termination and retaliation in violation of the common law of the District of Columbia.

2. Howard University wrongfully terminated Dr. Singletary in violation of 31 U.S.C. §3730(h) and in violation of the District of Columbia's public policy in June of 2014. In addition, Howard breached their contractual obligations to Dr. Singletary by failing and refusing to pay her all compensation and benefits to which she was entitled under her contract with them.

---

[1] The Complaint was served less than 21 days before this filing on July 27, 2017.

3. Dr. Singletary seeks compensatory damages sufficient to make her whole for the significant financial harm she has suffered as well as statutory damages and relief available under 31 U.S.C. §3730(h).

## II.   JURISDICTION AND VENUE

4. This action arises as a result of the Defendant's violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. §3730(h), and the Court has subject matter jurisdiction over this action under 31 U.S.C. §3730 and 31 U.S.C. §3732.

5. In addition this Court has jurisdiction over the District of Columbia claims as Howard maintains its principal place of business within the District of Columbia and the acts complained of herein occurred within the District.  The Court has jurisdiction over these matters pursuant to its supplemental jurisdiction available under 28 U.S.C. §1367.

6. Venue is appropriate in this Court under 28 U.S.C. §1391 because all acts and/or omissions described herein occurred within the District of Columbia and the Defendant maintains its principal places of business within the District.

## III.   PARTIES

7. Dr. Singletary is, and was all times relevant to this First Amended Complaint, a resident and citizen of the United States.  She was at all times relevant to this matter a duly licensed doctor of veterinary medicine.

8. Defendant Howard University is a private corporation federally chartered as an institution of higher learning by act of Congress passed March 2, 1867.  It is located in the District of Columbia.  Howard operates the Howard University College of Medicine (herein Howard University and the Howard University College of Medicine shall be referred to collectively and singularly as "Howard," "Howard University" or "Defendant").

## IV.    FACTS

9. Howard University originally hired Dr. Singletary to work as a veterinarian within the Howard University College of Medicine. She was responsible for the care and custody of all laboratory animals utilized at Howard's College of Medicine.

10. Dr. Singletary performed her duties in an exemplary manner throughout her employment with Howard. The requirements of her position mandated that she work with various researchers and investigators to ensure proper care and the humane and ethical treatment of laboratory animals.

11. There are myriad requirements that must be met by Howard and similar medical schools relating to the care and use of laboratory animals. The Animal Welfare Act was signed into law in 1966. The Health Research Extension Act was signed into law in 1985. These federal statutes regulate the care and use of animals in laboratory settings and are the salient statutes under which guidelines and regulations for animal research activity are promulgated.

12. Early in 2014, it became apparent to Dr. Singletary that Howard was in violation of the Animal Welfare Act, the Health Research Extension Act and the various regulations promulgated thereunder. More specifically, laboratory animals at Howard were being kept in conditions clearly in violation of regulations related to ambient air temperature and general treatment. The animals were being kept in areas that were too hot. This resulted in unnecessary suffering and deaths of laboratory animals used by Howard.

13. Dr. Singletary made every effort within Howard to rectify these issues and to bring the institution into compliance with the various statutes and regulations that applied. She informed her superiors on multiple occasions that the laboratory animals' living conditions must

be improved in order to comply with the statutes and regulations cited herein and to prevent operating the facility in a manner that resulted in cruelty to animals.

14. In addition to the statutory authorities discussed above, the treatment of the laboratory animals violated mandatory conditions of several federal grants that were paid to Howard to care for these animals and to fund research. Howard was periodically required by these grants to certify compliance with the statutes, and the regulatory regime supporting them, to the National Institutes of Health ("NIH"), an agency of the United States. It became clear to Dr. Singletary that the certifications that Howard had, upon information and belief, been making to NIH about the laboratory animals' ambient living conditions were false.

15. By mid-April of 2014, it had become clear to Dr. Singletary that Howard would not comply with the regulations despite her efforts and many communications to her superiors made in an effort to procure Howard's compliance. As a result, Dr. Singletary made a formal complaint to the National Institutes of Health on April 15, 2014.

16. After this complaint was made, she received open hostility from management in response to her concerns and in routine daily matters rather than cooperation and professional treatment.

17. Dr. Singletary had made every effort possible to correct Howard's practices within the University, without going to outside authorities. These efforts included several clear and simple communications to her superiors that the living conditions of the laboratory animals did not comply with the statutes and regulations cited herein and, further, did not comply with the express conditions of the grants under which Howard's College of Medicine was funded.

18. Despite excellent performance, and no previous record of professional lapses or performance deficiencies, Dr. Singletary was given notice by Howard on June 20, 2014, that her

employment would be terminated. This action was taken in direct retaliation for her efforts to force compliance with the statutes, regulations and grant requirements discussed and presented herein.

19. Dr. Singletary was fired because of her insistence that sound and ethical medical and business practices be followed, that the laboratory animals be treated in a humane fashion and because she reported the problems related herein to the National Institutes of Health, the body responsible for enforcing the conditions of certain grants under which Howard's College of Medicine operated. Terminating Dr. Singletary under these circumstances was a clear violation of the anti-retaliation provisions of the False Claims Act which are codified at 31 U.S.C. §3730(h) and a violation of the public policy of the District of Columbia which prohibits the termination of employees merely because they engage in efforts to comply with applicable law.

20. In addition, Dr. Singletary had entered a binding contract with Howard pursuant to which she was to be employed, at the very least, through the end of 2014. Pursuant to this contract Dr. Singletary was to earn a total salary and benefits worth at least $170,000 per year. The contract was a "for cause" contract. Under the terms of the contract, Howard was not permitted to terminate Dr. Singletary's employment "at will".

21. Howard breached its contract with Dr. Singletary by terminating her employment in June of 2014 without cause.

22. Dr. Singletary has suffered significant pecuniary and non-pecuniary damages as a direct, actual and proximate result of the acts complained of herein. Her career with Howard has been destroyed. She has suffered significant loss of pay and benefits. Moreover, she has experienced significant mental anguish, pain, suffering, emotional distress, humiliation and loss of quality and enjoyment of life. Her professional reputation has been significantly harmed by

Howard's actions.  The actions taken by Howard as set forth herein were intentional, willful, wanton and reckless.

## COUNT I

### *Retaliation in Violation of the False Claims Act*

23. Plaintiff incorporates into this Count all allegations set forth in this First Amended Complaint as if fully set forth herein.

24. Under the False Claims Act, a party can be held liable for: a) knowingly[2] presenting to the government, or causing to be presented, a false or fraudulent claim for payment or approval; b) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; or c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government.  31 U.S.C. §3729(a).  It is critical to note that specific intent to defraud is not necessary to prove a claim under the False Claims Act.  31 U.S.C. §3729(b).

25. There are two general types of claims that can be asserted under the False Claims Act:  claims that are legally false and claims that factually false.  An example of a factually false claim is presented where there is a contract to supply 1,000 pieces of equipment to the government, the contractor bills the government and receives payment for 1,000 pieces of equipment, but knew that only 900 pieces of equipment were delivered.  A legally false claim is one in which representations and certifications are made to the government about the provenance, conditions or quality of a product or service delivered to the government which are not true.[3]

---

[2] Under the False Claims Act "knowingly" means: actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; or acting in reckless disregard of the truth or falsity of the information.  31 U.S.C. §3729(b).

[3] This type of claim could also apply to the general circumstances or conditions under which a service is performed.

26.     Howard University made certifications to the National Institutes of Health and other federal agencies that the laboratory animals in question in this matter were being maintained and cared for under certain ambient living conditions.  These representations and warranties by Howard included representations pursuant to which Howard promised to maintain the laboratory animals in a humane, and identified, temperature range.  The representations ultimately made by Howard to NIH on this subject were false.  Dr. Singletary took action to remedy Howard's failure to comply with these requirements and this constituted protected conduct under 31 U.S.C. §3730(h).

27.     Given the circumstances related herein, a reasonable person in Dr. Singletary's position would have considered filing, and Dr. Singletary in fact considered filing, an action against Howard University under the federal False Claims Act.  Such an action indeed became a distinct and reasonable possibility as soon as Dr. Singletary became aware of all the facts related above.

28.     Dr. Singletary engaged in protected activity under 31 U.S.C. §3730(h) when she raised concerns, complaints and questions in an effort to stop Howard University's conduct as related herein and when she made her complaint to the National Institutes of Health.

29.     The Defendant ignored Dr. Singletary's concerns and terminated her because she complained about, raised concerns about, and attempted to stop the violations of the statutes, regulations and grant conditions discussed herein.

30.     As a direct, actual and proximate result of the Defendant's conduct, Dr. Singletary has suffered significant pecuniary and non-pecuniary damages including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, as well as suffering

mental anguish, anxiety, frustration, pain, humiliation, loss of reputation and loss of quality and enjoyment of life.

**WHEREFORE**, Sylvia Singletary, D.V.M., respectfully prays that this Court order the following relief for the claims asserted herein:

a) Order the Defendant to restore Dr. Singletary to her former position or to a comparable position and award her other equitable relief as appropriate;

b) Order the Defendant to institute programs, practices and policies which eradicate the effects of past retaliation in violation of the statutes set forth above;

c) Order the Defendant to make Dr. Singletary whole with payment of all pecuniary losses suffered as a result of the events set forth above including awards of back pay, reinstatement or front pay, lost benefits including lost health and retirement benefits, all with pre-judgment and post-judgment interest as applicable;

d) Order the Defendant to pay Dr. Singletary a separate and additional sum equivalent to her award of back pay as required under 31 U.S.C. §3730(h);

e) Order the Defendant to make Dr. Singletary whole by providing her full compensation for all non-pecuniary damages including emotional pain, suffering, inconvenience, anxiety, frustration, mental anguish, loss of reputation and loss of quality and enjoyment of life, with pre-judgment and post-judgment interest as applicable;

f) Order the Defendant to pay Dr. Singletary all costs and attorney's fees incurred in the prosecution of this action; and

g) Order such other relief as this Court deems appropriate.

## **COUNT II**

*Wrongful Termination in Violation of the Public Policy of the District of Columbia*

31.     All allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

32.     Howard terminated Dr. Singletary because she sought compliance with important laws and regulations regarding the care and maintenance of laboratory animals.

33.     Dr. Singletary was fired because, in taking the actions set forth above, she sought and attempted to vindicate the public policies contained, *inter alia*, in the Animal Welfare Act, the Health Research Extension Act and the regulations promulgated thereunder.

34.     The acts of Howard University as set forth within this Count were committed intentionally and with the specific purpose of retaliating against Dr. Singletary for filing her complaint with the National Institutes of Health and opposing the practices identified herein. This conduct was outrageous, willful and taken in total disregard for the rights of Dr. Singletary.

35.     As a direct, actual and proximate result of the Defendant's conduct, Dr. Singletary has suffered significant pecuniary and non-pecuniary damages including loss of pay, benefits, mental anguish, pain, suffering, emotional distress, humiliation and loss of quality and enjoyment of life.

**WHEREFORE**, Sylvia Singletary, D.V.M., respectfully prays that this Court order the following relief for all claims asserted in Count II, above:

a)     Order Howard University to make Dr. Singletary whole with appropriate lost earnings, future lost earnings and compensation for loss of all pensions and benefits in the amount of Six Hundred Thousand Dollars ($600,000.00) with pre-judgment and post-judgment interest as applicable;

    b)      Order Howard University to make Dr. Singletary whole by providing compensatory damages for non-pecuniary losses including, without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life in the amount of not less than One Million Dollars ($1,000,000.00) with pre-judgment and post-judgment interest as applicable;

    c)      Order Howard University to pay Dr. Singletary punitive damages in an amount sufficient to deter this conduct in the future; and

    d)      Order Howard University to provide Dr. Singletary with all other relief to which she is entitled and which this Court deems appropriate.

## COUNT III

### *Breach of Contract*

36.    All allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

37.    In terminating Dr. Singletary in June of 2014, Howard breached its contract with her pursuant to which it was to pay her salary and benefits worth approximately $170,000 per year.

38.    As a direct, actual and proximate result of Howard's breach, Dr. Singletary has suffered significant pecuniary damages as noted above.

39.    As a result of Howard's breach of this contract, Dr. Singletary has suffered damages in the amount of at least $85,000.

**WHEREFORE**, Sylvia Singletary, D.V.M., respectfully prays that this Court order the following relief for all claims asserted in Count III, above:

a) Order Howard University to make Dr. Singletary whole by awarding her the damages she has suffered as a result of Howard's breach of their contract with her in the amount of Eighty-Five Thousand Dollars ($85,000.00);

b) Order Howard University to provide Dr. Singletary with all other relief to which she is entitled and which this Court deems appropriate.

## JURY TRIAL DEMANDED

The Plaintiff requests a jury trial on all issues raised in this First Amended Complaint.

Respectfully submitted,

**SYLVIA SINGLETARY, D.V.M.**


By:    */s/ James H. Shoemaker, Jr.*
              Of Counsel

James H. Shoemaker, Jr., D.C. Bar No. VA029
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was sent via electronic and first class mail to the following this 8th day of August, 2017:

Jennifer L. Curry
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
100 Light Street, 19th Floor
Baltimore, MD 21202
Phone 410.862.1183
Fax 443.263.7583
jcurry@bakerdonelson.com
*Counsel for Howard University*

                            */s/ James H. Shoemaker, Jr.*