# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **SYLVIA SINGLETARY,** |
| Plaintiff, |
| v. |
| **HOWARD UNIVERSITY,** |
| Defendant. |

Case No. 1:17-cv-01198 (TNM)

## MEMORANDUM OPINION

Plaintiff Sylvia Singletary, a licensed doctor of veterinary medicine, alleges that her former employer, Howard University, unlawfully terminated her employment and seeks damages and other relief for breach of contract and under the Anti-Retaliation Clause of the False Claims Act and the District of Columbia's wrongful termination public policy exception. First Am. Compl. ("Am. Compl.") ¶¶ 1-2, 7, ECF No. 4. The University seeks to dismiss the complaint for failure to state a claim, contending that Dr. Singletary did not engage in activity protected under the False Claims Act and that the University did not actually terminate her employment. Howard Univ.'s Mem. of P. & A. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") 6-12, ECF No. 9. The Court finds that Dr. Singletary has neither sufficiently alleged that she engaged in protected activity nor that the University terminated her employment. Dr. Singletary's False Claims Act claim should therefore be dismissed for failure to state a claim, and because the University's other grounds for dismissal presents a challenge to her standing, her other claims will be dismissed for lack of subject matter jurisdiction. The University's motion will accordingly be granted and the Amended Complaint will be dismissed.

# I.

Dr. Singletary, a licensed doctor of veterinary medicine, is a former University employee. Am. Compl. ¶¶ 7, 9.[1] At the University, she was responsible for the care, treatment, and custody of all laboratory animals at the University's College of Medicine. *Id.* ¶¶ 9-10. She also was responsible for maintaining the University's compliance with various federal statutes and regulations on the care of the laboratory animals, including the Animal Welfare Act ("AWA") and the Health Research Extensions Act ("HREA"), both enforced by the National Institute of Health ("NIH"). *Id.* ¶¶ 11, 14.

Early in 2014, Dr. Singletary allegedly noticed and informed her superiors that the animals' living conditions violated the AWA and HREA; specifically, that the animals were being kept in areas that were too hot, leading to the "unnecessary suffering and deaths" of some animals. *Id.* ¶ 12. After her "efforts and many communications to her superiors," Dr. Singletary alleges that she formally lodged a complaint to the NIH on April 15, 2014. *Id.* ¶ 15. After making her complaint, Dr. Singletary alleges that she was subject to "open hostility from management" and that the University gave her notice in June 2014 that she would be terminated. *Id.* ¶¶ 16, 18.

Dr. Singletary's three-count Amended Complaint alleges that (1) the University retaliated against her in violation of the False Claims Act ("FCA") because she engaged in protected activity by communicating her concern to her superiors and making a report to NIH, *id*. ¶¶ 28-29; (2) she was wrongfully terminated in violation of the public policy of the District of

---

[1] Though Dr. Singletary does not provide her title in her Amended Complaint, in a letter written by Dr. Singletary to the University, she states her "position as Director Veterinary Services for the College of Medicine and University Veterinarian." Mot. to Dismiss Ex. 1, ECF No. 9-2.

Columbia, *id.* ¶ 33; and (3) the University breached its employment contract with her by terminating her without cause, *id.* ¶¶ 21, 37.

## II.

Subject matter jurisdiction concerns a court's power to hear a claim. *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003). If the "irreducible constitutional minimum of standing" is not met, a court lacks subject matter jurisdiction over the claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of proof to establish that she has standing and must show that she personally suffered an actual or imminent injury because of the defendant's illegal conduct, and that the injury can be redressed by a favorable court decision. *Id.* at 560. A court may look beyond the complaint to consider "undisputed facts evidenced on the record" to satisfy itself that it has subject matter jurisdiction. *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

A party may move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is insufficient if it merely offers "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 546). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46.

3

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### III.

Each of Dr. Singletary's claims fail. Her FCA claim fails to state a claim because she has not sufficiently pleaded that she engaged in a protected activity. Dr. Singletary's other claims fail because she has not met her burden to show that she has standing for her claims of wrongful termination and breach of contract. Am. Compl. ¶¶ 9-10. Both bases are discussed below.

### A.

The FCA imposes liability on "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Individuals who aid the Government in these actions receive a monetary award up to 25% of the proceeds of the action or settlement of the claim. *Id.* § 3730(d)(1)(b). The FCA also provides broad anti-retaliation protection for whistleblowers. An "employee, contractor, or agent" may

seek relief if an employer "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of [the] lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter." *Id.* § 3730(h)(1).

A fundamental component to a retaliation claim is the employee's engagement in a protected activity. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (explaining that a retaliation claim requires an employee to show that she engaged in protected activity and that her employer discriminated against her because of that activity). When the employee's claimed protected activity is within her regular responsibilities or duties, the employee must sufficiently explain how the claimed protected activity falls outside the scope of her regular work activity. *See United States v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004). Dr. Singletary has not sufficiently pleaded that she engaged in a protected activity.

Dr. Singletary's role at the University was to maintain the care and custody of all laboratory animals at the medical school. Am. Compl. ¶ 9. This included complying with federal statutes and regulations governing animal research activity. *Id.* ¶ 11. Dr. Singletary alleges that her internal reports to superiors about improving the animals' living conditions, and her later complaint to the NIH, constituted activities protected by the FCA's anti-retaliation provision. *Id.* ¶ 13; Mem. of P. & A. in Opp. to Mot. to Dismiss ("Pl.'s Opp.") 12, ECF No. 11. But she fails to allege that either her internal reports to supervisors or her complaint to NIH were extraordinary to her regular responsibilities at the University. *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996) (affirming the dismissal of a FCA retaliatory discharge claim because the plaintiff was not engaged in protected activity when

"the monitoring and reporting activities described in plaintiff's complaint were exactly those activities plaintiff was required to undertake in fulfillment of her job duties"); *see also Yesudian*, 153 F.3d at 743 ("Merely grumbling to the employer about . . . regulatory violations does not . . . constitute protected activity in the first place.").

As Dr. Singletary herself admits, her role at the University was to "bring the institution into compliance" with applicable federal regulations. Am. Compl. ¶ 13. The only information alleged in her Amended Complaint about reporting her concern to the University is the brief mention that she "informed her superiors" that the animals' living conditions must be improved. *Id.* She later repeats that she "raised concerns, complaints and questions." *Id.* ¶ 29. These sparse allegations—without further detail of who she informed or what she said—do not adequately show that her alleged actions were beyond the scope of her regular work responsibilities. *See Frett v. Howard Univ.*, 24 F.3d 76, 87 (D.D.C. 2014) (holding that a plaintiff's report to an auditor about deficiencies and risks was within the terms of his employment). Rather, the reasonable factual inference one draws from these cursory statements is that she was acting in her role as the caretaker of the laboratory animals. Without more, Dr. Singletary's alleged action of informing or updating her supervisors of items within her job responsibility does not sufficiently plead that she engaged in a protected activity. Thus, Dr. Singletary's FCA claim fails state a claim.[2]

---

[2] To support its motion, the University submitted a letter from the NIH in response to a Freedom of Information Act request the University made for "[a]ll emails, letters, correspondence, reports and/or formal complaints (and any supporting documents), filed in or around April 15, 2014, by Sylvia Singletary with NIH's Office of Laboratory Animal Welfare." Not. of Governmental R. as Supp. Ex. 3, at 11, ECF No. 14-1. The NIH identified an email sent by Sylvia Singletary to NIH, the entirety of which reads, "At 10:45 am, April 15, 2014. I found 21 mice dead from heat exhaustion. Room number [redacted] which houses animals on a IVC lost power over night. In addition, we have been having difficulty with receiving condition [*sic*] air in the facility. A more detailed report will be submitted after I have briefed the IACUC and IO." *Id.* Although I need

6

Furthermore, though the analysis above is enough to warrant dismissal of Dr. Singletary's FCA claim, Federal Rule of Civil Procedure 9(b) requires any allegations of fraud or mistake to be "state[d] with particularity." Because the FCA is "self-evidently an anti-fraud statute," all complaints must comply with Rule 9(b). *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552-51 (D.C. Cir. 2002). A plaintiff must "provide the who, what, when, where, and how" about the fraudulent circumstances. *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (internal quotation marks omitted). The Amended Complaint does not state with particularity the circumstances of the University's allegedly false claims. Other than claiming that the University made "representations and warranties" about the conditions in which the laboratory animals lived, the Amended Complaint lacks detail about who made these statements, when these statements were made, what the University certified to, and why these statements were false when they were allegedly made. *See* Am. Compl. ¶ 26.

**B.**

The University argues that Dr. Singletary's claims for wrongful termination and breach of contract must be dismissed under Rule 12(b)(6) because she voluntarily resigned. Mot. to Dismiss 11-12. Because both of her claims are based on the allegation that she was wrongfully terminated, Am. Compl. ¶¶ 18-19, 21, the University's argument is more properly construed as a challenge to her standing. *See Steffan v. Cheney*, 733 F. Supp. 115, 117-19 (D.D.C. 1989) (finding that whether the plaintiff voluntarily resigned was a question of standing to be resolved

---

not consider this letter in making my determination as described above, this document reinforces the inference that Dr. Singletary acted within the regular scope of her responsibilities in making a report to the NIH. This apparently routine incident report to the NIH, which ultimately resulted in a cursory response from the NIH finding that no action would be taken by the Government, *id.* at 4, is a far cry from the grist of the FCA allegation.

by reviewing the plaintiff's pleadings).  Dr. Singletary's claims must be dismissed because she has not pleaded facts sufficient to show that her allegation of wrongful termination is facially plausible.  *See Iqbal*, 556 U.S. at 678.  As a result, she has not carried her burden to prove that this Court has subject matter jurisdiction over these claims.

To establish a case or controversy under Article III, a plaintiff must show the "irreducible constitutional minimum" of an actual or threatened injury, among other requirements.  *Lujan*, 504 U.S. at 560.  Dr. Singletary alleges that she was "given notice by [the University] . . . that her employment would be terminated," and that her termination was "without cause."  Am. Compl. ¶¶ 18, 21.  She does not, however, allege any factual detail about who gave her the alleged termination notice, the format of the alleged communication, or any effective date of the termination.  Indeed, the phrasing of Dr. Singletary's allegation—that her employment "*would be* terminated"—implies that the University, at most, evidenced the possibility of termination at a future date.  *See id.* ¶ 18 (emphasis added).  Her Amended Complaint contains no other non-conclusory factual allegation that the University subsequently made any other statements or acts in furtherance of its supposed intention, or any other information from which this Court can conclude that Dr. Singletary met her burden to establish subject matter jurisdiction.

To counter Dr. Singletary's assertion that she was terminated "in June of 2014 without cause," Am. Compl. ¶ 21, the University provides a few documents.  *See Coalition for Underground Expansion v. Mineta*, 333 F.3d at 198 ("where necessary [to evaluate subject matter jurisdiction], the court may consider the complaint supplemented by undisputed facts evidenced in the record").  First, the University provides a letter from Dr. Singletary to the Dean of the College of Medicine, dated August 7, 2014, wherein she writes, "I would like to inform you that I am resigning from my position as Director Veterinary Services for the College of

8

Medicine and University Veterinarian, Howard University effective August 25th, 2014." Mot. to Dismiss Ex. 1. Second, the University offers Dr. Singletary's pay statements for the period between June 1, 2014 and September 6, 2014. *Id.* Ex. 2. Dr. Singletary has not challenged the validity of any of these documents; in fact, she admits that she "did submit a resignation letter" in August 2014. *See* Pl.'s Opp. 1; *id.* Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. These unrefuted documents indicate that—contrary to her allegation that she was terminated in June 2014—she was employed by the University for several months after her alleged termination, received wages during that period, resigned in August 2014, and resigned voluntarily.

In response to the University's challenge, Dr. Singletary admits that "while she did submit a resignation letter, she was given no choice but to resign or be terminated." Pl.'s Opp. 1; *id.* Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. She likens her case to *Steffan v. Cheney*, where a Naval Academy midshipman submitted a resignation letter but the court found that he had sufficiently alleged an Article III injury. 733 F. Supp. at 117-19. There, the court found that the midshipman was "separated, against his will" for admitting that he was a homosexual and because he alleged that his performance officer "repeatedly warned [him] that the negative aura surrounding an involuntary discharge would adversely affect [him] . . . He added that, if I were discharged, my military discharge certificate would include a code that meant 'homosexual' and that if I chose to resign, this code would be omitted." *Id.* at 116-17.[3]

Neither Dr. Singletary's pleading nor affidavit alleges any facts to show that she resigned under duress or was constructively discharged. *See Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 461 (D.C. Cir. 1988) (holding constructive discharge occurs

---

[3] At the time, Naval Academy regulations required that homosexual midshipmen be considered for separation. *Id.* at 116.

where a reasonable person "would have felt compelled to resign"). Dr. Singletary merely alleges that she "was given notice . . . that her employment would be terminated," Am. Compl. ¶ 18, and that she resigned to take the "prudent course of action . . . to proceed with available employment [elsewhere] and resign." Pl.'s Opp. Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. Though she characterizes it as "an involuntary termination," she provides no additional detail about the circumstances that made it legally involuntary, other than her belief that it was. *See Stevens v. Sodexho, Inc.*, 846 F.2d 119, 125 (D.D.C. 2012) (reasoning that the plaintiff must plead more than mere words stating that he was a "contract full-time employee"). This conclusory allegation falls well short of the type of conduct and detail alleged in *Steffan*, where the plaintiff was a student, was subject to and disciplined under the military's hierarchical system, and resigned because Naval Academy regulations required that homosexual students be separated from the school. 733 F. Supp. at 115, 119. Dr. Singletary has not adequately pleaded facts to show constructive termination, and without it, she has not met her burden to establish that she was either injured or that injury was imminent. *See Lujan*, 504 U.S. at 560. This deficiency requires that Dr. Singletary's wrongful termination and breach of contract claims be dismissed for lack of subject matter jurisdiction.[4]

---

[4] Though standing is dispositive for Dr. Singletary's claims, if this Court had subject matter jurisdiction, Dr. Singletary's wrongful termination and breach of contract claims would likely fail under Rule 12(b)(6) as well.

The District of Columbia has a "very narrow" exception to the general rule that at-will employees may be discharged "at any time, for any reason, or for no reason at all" if the employee was discharged only because she refused to violate the law. *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30, 34 (D.C. 1991). To start, Dr. Singletary alleges that she was not an at-will employee and that she had an employment contract with the University. Am. Compl. ¶ 20. And she has not alleged sufficient facts to plead a facially plausible case that she was discharged for refusing to violate the law or a public policy "firmly anchored either in the Constitution or in a statute or regulation." *See Herron v. Fannie Mae*, 861 F.3d 160, 171 (D.C. Cir. 2017).

# IV.

For these reasons, the University's motion to dismiss will be granted and the Amended Complaint will be dismissed without prejudice. A separate order will issue.

Dated: June 6, 2018

TREVOR N. MCFADDEN
United States District Judge

---

As for her breach of contract claim, the Amended Complaint fails to provide non-conclusory details of the alleged contract between Dr. Singletary and the University, the provisions or language that she claims was breached, and the circumstances of the University's alleged breach. The mere allegation that the University "terminat[ed] her employment in June of 2014 without cause" is a "naked assertion devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).